IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-03242-PAB-BNB

MICHELLE GARRETT, and
RICHARD L. GARRETT,

      Plaintiffs,

v.

BNC MORTGAGE, INC.,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
US BANK NATIONAL ASSOCIATION, as Trustee for the
Structured Asset Investment Loan Trust 2006-BNC3,
WELLS FARGO HOME MORTGAGE, INC., owner of
America's Servicing Company, and
ARONOWITZ & MECKLENBURG, LLP, attorneys representing
trustee,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on plaintiffs' Emergency Motion for Preliminary Injunction [Docket No. 2]. On December 13, 2011, the Court denied the motion to the extent it sought the issuance of an *ex parte* temporary restraining order and held the motion's request for a preliminary injunction in abeyance to permit plaintiff to provide notice to defendants. A hearing on the motion is scheduled for December 21, 2011. The Court has reviewed the pro se plaintiffs' motion and verified complaint [Docket No. 1] liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and concludes that the motion can be resolved without a hearing.

Plaintiffs reside on property which they purchased by way of a mortgage loan.

On June 26, 2006, plaintiffs refinanced the loan on the property with defendant BNC Mortgage, Inc. ("BNC"). Plaintiffs began to struggle to make the payments on that loan around January 2009. In October 2010, defendant US Bank National Association ("US Bank") initiated foreclosure proceedings. Plaintiffs had not heard of US Bank prior to the initiation of those proceedings. On November 2, 2011, US Bank acquired the property at a foreclosure sale. Plaintiffs have been notified that, if they fail to surrender possession of the property by December 12, 2011, US Bank will commence eviction proceedings. *See* Docket No. 1-1 at 92. Plaintiffs seek a preliminary injunction preventing US Bank from commencing such proceedings.

In order to obtain a preliminary injunction, the moving party bears the burden of establishing that four factors weigh in its favor: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). Consequently, granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), "is the exception rather

than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).  "[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *See Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted).

Although plaintiffs assert a number of claims in their verified complaint, the basis for plaintiffs' requested injunction appears to be limited to their claim that "none of the Defendants were or are the holder in due course, and none of the Defendants are real parties in interest, thereby lacking an interest in the Note, Deed of Trust, and indeed the property." Docket No. 2 at 2.  Plaintiffs refer to being forced to leave their home, but the motion does not argue that they are entitled to remain in possession.  Rather, plaintiffs contend that none of the defendants sufficiently established their right to initiate foreclosure proceedings.  Consequently, plaintiffs argue that they will suffer irreparable harm if the property is "sold to satisfy an invalid debt or to pay a party other than the true owner of Plaintiffs' Note" because plaintiffs "would be exposed to potentially ruinous financial liability in the event the actual Note owner should one day make claim upon the Note." Docket No. 2 at 2.

As an initial matter, it is far from clear that the Court can reach the merits of the underlying foreclosure sale at this late stage. *See Brode v. Chase Home Finance, LLC*, No. 10-cv-00692-WYD-MJW, 2010 WL 2691693, at *6 (D. Colo. July 6, 2010) ("If the state court had actually approved the sale before this suit was commenced, i.e., issued the final order in the foreclosure process, I agree with Defendants that Plaintiff's rescission claim would be barred by the *Rooker-Feldman* doctrine because it essentially

3

would seek to undo that order . . . ."). In any event, the process by which the foreclosure sale was authorized accounts for the specific risk of harm plaintiffs have identified. Plaintiffs allege that no defendant possesses the note and deed of trust or otherwise possesses evidence of the right to foreclose on the property. See Docket No. 1 at 13-16, 32-33. There would be no purpose served by having an evidentiary hearing on that issue because, even accepting plaintiffs' contention as true, they have failed to identify an irreparable harm.[1] Under the relevant Colorado statutory provision, one who claims to be entitled to foreclose on a debt may do so "without the original evidence of debt," "without the original recorded deed of trust or a certified copy thereof," and "without the proper indorsement or assignment of an evidence of debt." Colo. Rev. Stat. § 38-38-101(2). Upon doing so, however, the foreclosing entity "shall, by operation of law, be deemed to have agreed to indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt is presented for payment." Id. Consequently, plaintiffs have not demonstrated that, if a true holder of the debt were to proceed against them, they would suffer irreparable harm. See Winter, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original).

---

[1]See Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175-76 (3d Cir. 1990) (noting that Fed. R. Civ. P. 65(a) "does not make a hearing a prerequisite for ruling on a preliminary injunction," and that a hearing "would not be necessary if the movant is proceeding on a legal theory which cannot be sustained," "if the facts are undisputed and the relevant factual issues are resolved," or "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.").

As noted above, it does not appear that plaintiffs seek an injunction on any other basis, and the Court's review of the verified complaint does not reveal an obvious basis for granting the "extraordinary relief" of a preliminary injunction preventing the commencement of eviction proceedings.  For instance, plaintiffs' first two claims for relief invoke the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Colorado Fair Debt Collection Practices Act ("CFDCPA"), Colo. Rev. Stat. § 12-14-101, *et seq.*  Even assuming that any of the defendants' conduct implicates the FDCPA, injunctive relief is not an available remedy.  *See Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004) ("The FDCPA contains no express provision for injunctive or declaratory relief in private actions.  Most courts have found equitable relief unavailable under the statute, at least with respect to private actions.") (citation and footnote omitted); 15 U.S.C. § 1692k; *see also Braun v. Stawiarski*, No. 03-cv-02098-WDM-PAC, 2006 WL 2793150, at *4 (D. Colo. Sep. 28, 2006).  And, assuming injunctive relief is available pursuant to the CFDCPA, plaintiffs' allegations regarding debt collection all occurred in the past.  Plaintiffs do not explain how an injunction against the commencement of eviction proceedings would, as far as any potential CFDCPA violations are concerned, "preserve the relative positions of the parties until a trial on the merits can be held."  *See Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted).

The Court further notes that plaintiffs' third through thirteenth causes of action rely, in whole or part, on the Colorado Consumer Protection Act ("CCPA"), Colo. Rev.

Stat. §§ 6-1-101 *et seq.* To succeed on a CCPA claim, plaintiffs must establish that "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). The third requirement is dispositive here. Relevant considerations in assessing public impact include "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003). Public impact can be shown by reference to misrepresentations that are "directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). On the other hand, if the wrong is purely private in nature, the CCPA does not provide a remedy. *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006). Accepting all the allegations of the complaint as true, plaintiffs have not shown that "the challenged practice . . . significantly impact[s] the public as actual or potential consumers of the defendant's goods, services, or property." *Hall*, 969 P.2d at 234. Plaintiffs only describe the practices insofar as they impact them personally. *See James River Ins. Co. v. Rapid*

*Funding, LLC*, No. 07-cv-01146-CMA-BNB*,* 2009 WL 524994, at *6 (D. Colo. March 2, 2009) (concluding that CCPA claim was unsupported in a case where "the insurance policy at issue is a private contract between the parties and not the type of widespread transaction that affected (or could affect) the public as a whole" and noting that the CCPA does not cover "every private contract made by a company that advertises to the public").

Plaintiffs have also alleged that defendants have violated various disclosure requirements. For instance, plaintiffs cite Colo. Rev. Stat. § 12-61-911(1)(j), which incorporates by reference certain federal statutory provisions. Plaintiffs allege that defendants BNC and Mortgage Electronic Registration Systems, Inc. "fail[ed] to provide required disclosures." Docket No. 1 at 29, ¶ 149. To the extent this is an attempt to assert violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, or the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, plaintiffs' allegations regarding the original lenders do not support a viable legal basis to issue an injunction against US Bank. *See Duke v. H & R Block Bank*, No. 10-cv-01927-REB-KLM, 2011 WL 1060656, at *4 (D. Colo. Mar. 8, 2011) (section 2603 and 2604 of RESPA "outline the disclosures which lenders must provide borrowers, but they do not create a private cause of action against mortgage lenders who fail to make such disclosures"); *see also* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ."); *Kruse v. U.S. Bank N.A.*, No. 09-cv-02302-LTB-

BNB, 2010 WL 743509, at *3 (D. Colo. March 1, 2010) ("Plaintiff's right to rescission expired pursuant to 15 U.S.C. § 1635(f) upon the sale of the property."); *see also Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1257 (D. Colo. 2004) (TILA's one-year statute of limitations commences on date promissory note was signed).[2]

In short, the Court concludes that plaintiffs have failed to demonstrate that they will likely suffer irreparable harm or that there is a likelihood of success on the merits of any claims which afford injunctive relief. *See RoDa Drilling*, 552 F.3d at 1208. Therefore, it is

**ORDERED** that plaintiffs' Emergency Motion for Preliminary Injunction [Docket No. 2] is DENIED. The December 21, 2011 hearing on the motion is vacated.

---

[2]The Court does not have original jurisdiction over the various other state law causes of action asserted by plaintiffs, thus requiring the exercise of supplemental jurisdiction. The state law claims, however, arguably predominate in this action, a potential basis to decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(2); *Gordon v. Wells Fargo Bank, N.A.*, No. 11-cv-00123-BNB, 2011 WL 1557866, at *3 (D. Colo. April 25, 2011) (concluding that Colorado foreclosure proceeding predominated over FDCPA and due process claims and noting that "matters concerning foreclosure have traditionally been resolved in the state courts"); *see also Burlinson v. Wells Fargo Bank, N.A.*, No. 08-cv-01274-REB-MEH, 2009 WL 646330, at *6 (D. Colo. March 9, 2009); *cf. Jones v. Baugher*, 689 F. Supp. 2d 825, 835 (W.D. Va. 2010) ("[T]he court concludes that Jones' state law claims involve novel and potentially complex issues of state law and that those claims substantially predominate over his FDCPA claim, and therefore, the court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(1) and (2)."). The Court will not resolve that issue at this stage, but the possibility also weighs against issuance of a preliminary injunction.

DATED December 20, 2011.

                                             BY THE COURT:

                                             s/Philip A. Brimmer
                                             PHILIP A. BRIMMER
                                             United States District Judge