IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03242-PAB-BNB

MICHELLE GARRETT, and
RICHARD L. GARRETT,

Plaintiffs,

v.

BNC MORTGAGE, INC.,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
U.S. BANK, N.A., as Trustee for the Structured Asset Investment Loan Trust 2006-BNC3,
WELLS FARGO HOME MORTGAGE, INC., owner of America's Servicing Company, and
ARONOWITZ & MECKLENBERG, LLP, attorneys representing trustee,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **Motion to Dismiss by Defendants U.S. Bank, Wells Fargo, and MERS and Supporting Brief** [Doc. #22, filed 01/27/2012] (the "Motion").[1] I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

The plaintiffs are proceeding *pro se*, and I must liberally construe their pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[1]This court has jurisdiction over the case pursuant to 28 U.S.C. § 1331 (federal question).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiffs filed their "Verified Complaint to Set Aside a Wrongful Foreclosure, For State and Federal Law Causes, and for Damages" on December 12, 2011 [Doc. #1] (the "Complaint"). The Complaint alleges the following:

1.  The plaintiffs, Michelle and Richard Garrett, purchased as a primary residence property located at 103 Rabbit Road, Carbondale, Colorado 81623 (the "Property"). *Complaint*, ¶ 10.

2.  On June 26, 2006, the plaintiffs refinanced the loan on the Property with defendant BNC Mortgage, Inc. ("BNC").[2] Id. at ¶¶ 12-13. The plaintiffs executed a note for $336,000.00 in favor of BNC which was secured by the Property. Id. at ¶¶ 13-16 and Exs. A, B.

3.  In or around January 2009, the plaintiffs defaulted on the loan. Id. at ¶ 32.

---

[2]On January 6, 2012, BNC filed a notice which states that it is subject to an automatic stay because it filed for bankruptcy on January 9, 2009 [Doc. #16].

4. In October 2010, the plaintiffs received notice from the law firm of Aronowitz & Mecklenberg, LLP ("Aronowitz & Mecklenberg"), that US Bank National Association ("US Bank") had initiated foreclosure proceedings. The plaintiffs had never heard of US Bank prior to receiving the notice. Id. at ¶ 42.

5. Mr. Garrett filed for bankruptcy on May 19, 2011. Id. at ¶ 50.

6. US Bank was granted relief from the bankruptcy proceeding's automatic stay. Id. at ¶ 58.

7. On November 2, 2011, US Bank acquired the Property at a foreclosure sale. Id. at ¶ 61.

8. Wells Fargo Home Mortgage, Inc. ("Wells Fargo") owns America's Servicing Company ("ASC"). Id. at caption. ASC was the servicer of the plaintiffs' loan. Id. at ¶¶ 63, 67, 70.

The plaintiffs assert 16 claims for relief. Claim One alleges that all of the defendants violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601, *et seq*. Claim Two alleges violations of the Colorado Fair Debt Collection Practices Act ("CFDCPA") against Aronowitz & Mecklenberg, US Bank, and Wells Fargo. Claims Three through Thirteen allege violations of the Colorado Consumer Protection Act ("CCPA"), §§ 6-1-101 *et seq.*, against various defendants. Claims Seven through Ten allege violations of § 38-40-105, C.R.S. ("Prohibited Acts by Participants in Certain Mortgage Loan Transactions - Unconscionable Acts and Practices") against defendants BNC and Mortgage Electronic Registration Systems, Inc. ("MERS"). Claim Eleven alleges a violation of § 12-61-904.5 ("Originator's Relationship to Borrower - Rules") against all defendants. Claims Twelve and Thirteen allege violations of §

3

12-61-911 against BNC and MERS. Claim Fourteen alleges "Conspiracy to Defraud" against all defendants. Claim Fifteen alleges "Lack of Standing to Pursue Foreclosure and Sale Under Power" against all defendants. Claim Sixteen alleges "Fraud Upon the Court to Obtain Favorable Rulings" against all defendants.

The plaintiffs seek injunctive relief including an order setting aside the wrongful foreclosure. They also seek declaratory relief, economic and non-economic damages, and punitive damages.

### III. ANALYSIS

#### A. Claim Preclusion

The defendants argue that all of the plaintiffs' claims are barred by claim preclusion. *Motion*, pp. 4-5. An understanding of the Colorado real estate foreclosure process is necessary prior to addressing the defendants' argument. The court in <u>Beeler Properties, LLC v. Lowe Enterprises Residential Investors, LLC</u>, 2007 WL 1346591 (D. Colo. May 7, 2007), set forth a summary of the process:

> In Colorado, consensual liens against real property are created by recordation of a deed of trust granted by the lender to the public trustee of the county where the property is situate. Foreclosure of such liens is a hybrid process governed by statute. The process involves issuance of orders by the state district court authorizing and confirming the sale. C.R.C.P. 120; § 38-38-105, C.R.S. However, the process of conducting the sale and the parties' rights in such process are largely administrative.
>
> Upon default, if the deed of trust so authorizes, the lender or holder of the note may direct the public trustee to sell the property at a foreclosure sale. § 38-38-101(1), C.R.S. The lender must also seek an order from the state district court authorizing the sale under Rule 120. Once a sale is authorized, the public trustee advertises and conducts the sale. § 38-38-101(4), C.R.S. The property is sold to the highest bidder who receives a Certificate of

> Purchase. Often, the purchaser is the holder of the deed of trust who bids all or part of the debt owed by the borrower.
>
> FN3. The Rule 120 procedure requires notice and gives the borrower an opportunity to object to the sale. Under Rule 120(a), the holder of the note files a verified motion in the state court requesting an order authorizing the sale of the property. The clerk of the court then sets a hearing "not less than 20 nor more than 30 days after the filing of the motion[.]" C.R.C.P. 120(a). Interested persons who oppose the motion have an opportunity to respond. C.R.C.P. 120(c). After hearing, the court must "summarily" either grant or deny the motion. C.R.C.P. 120(d). If the court authorizes the foreclosure sale, it also "shall require a return of such sale to be made to the court, and if it appears therefrom that such sale was conducted in conformity with the order authorizing the sale, the court shall thereupon enter an order approving the sale." C.R.C.P. 120(g).
>
> Prior to sale, the borrower may cure the default. After sale, the borrower and any junior lienholders may redeem the title to the property by paying, to the holder of the Certificate of Purchase, the sum for which the property was sold with interest from the date of sale, together with any taxes paid or other proper charges. See § 38-38-101 to § 38-38-103, C.R.S. Redemption thus annuls the sale. If the redemption period passes, the holder of the Certificate of Purchase may seek an order confirming the sale and obtain a Trustee's Deed.
>
> FN4. The time for redemption depends upon the nature of the property. § 38-38-302, C.R.S.
>
> Rule 120(d) expressly provides that an order authorizing the sale of property is not "an appealable order or judgment." However, a party may seek injunctive or other relief in any court of competent jurisdiction. Id.

Id. at *2.

In Beeler, the court noted that "[g]iven the nature of the Colorado foreclosure process, it is difficult to determine" when the state proceedings are final. Id. at *2-*3. "It could be at the

5

time of the sale, expiration of the redemption periods, upon issuance of an order confirming the sale, or upon issuance of a Trustee's Deed." Id. at *3.

The Tenth Circuit Court of Appeals has recognized that a state foreclosure action is final and subject to application of the Rooker-Feldman doctrine[3] where the state court had entered an order approving the sale of the property to the bank; the Public Trustee had issued a deed to the bank; the state court had entered an order in an eviction action for judgement for possession of the property in favor of the bank; and the plaintiff was not seeking to enjoin foreclosure of the property, but was instead attempting to completely undo the foreclosure. Dillard v. Bank of New York, 2011 WL 2728925 at *5 (D.Colo. May 9, 2011); Dillard v. Bank of New York, 2012 WL 1094833 at *2, n.3 (10th Cir. April 3, 2012).

The circuit court has also held that where the bank obtained an order authorizing (but not approving) sale of the property, the state court's finding that the bank had standing to foreclose on the property was not a final judgment, and therefore was not subject to the Rooker-Feldman doctrine or the preclusion doctrine. In re Miller, 666 F.3d 1255 (10th Cir. 2012). In doing so, the court stated:

> We note that Rule 120 itself provides that "[t]he granting of [a Rule 120 motion] shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief in any court of competent jurisdiction[.]" Colo. R. Civ. P. 120(d) (emphasis added) . . . .
>
> We further note indications that the Colorado courts would limit the effect of determinations in Rule 120 proceedings. The Colorado Court of Appeals has stated that "proceedings pursuant

---

[3]The Rooker-Feldman doctrine prohibits a United States district court from considering claims that amount to appeals of final state court judgments. Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1139 (10th Cir. 2006).

> to C.R.C.P. 120 are not adversarial in nature, are not final, and
> generally no appeal may be taken to review the resulting orders."
> Accordingly, no final judgment is entered in Rule 120 proceedings
> and the rulings of the court in such proceedings do not have
> preclusive effect.

Id. at 1262 (citations omitted).

The plaintiffs initiated this action on December 12, 2011. At that time, the Property had been sold at public auction to US Bank, *Complaint*, ¶ 61; *Motion*, Ex. D. Together with the Complaint, the plaintiffs filed an "Emergency Motion for Preliminary Injunction" seeking to prevent US Bank from commencing eviction proceedings [Doc. #2]. However, the Eagle County District Court had not yet approved the sale. Thus, it is unclear under the current case law whether the foreclosure is final for purposes of the Rooker-Feldman doctrine or the preclusion doctrine. Regardless of when the state proceedings are deemed final, this court cannot reach the plaintiffs' attempts to set aside the foreclosure.

If finality of a Colorado foreclosure action occurs upon the sale of the property at public auction, then the plaintiffs' state foreclosure action was final before they filed this federal action, and the Rooker-Feldman analysis governs the plaintiffs' claims to set aside the foreclosure.[4] The plaintiffs are seeking federal review and rejection of the state foreclosure action, which is precisely the type of action barred by Rooker-Feldman. See Exxon, 544 U.S. at 284 (holding that the Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

---

[4] I may raise this issue *sua sponte* because the Rooker-Feldman doctrine "operates as a subject-matter jurisdictional bar that may be raised at any time." Guttman v. Khalsa, 401 F.3d 1170, 1173 n.2 (10th Cir. 2005).

If finality of the state foreclosure action occurred upon issuance of the order approving the sale, then the state foreclosure action became final while this action was pending. Under those circumstances, preclusion law would govern the disposition of this action. Exxon, 544 U.S. at 292-92 (stating that comity or abstention doctrines may be applicable when there is parallel ongoing state and federal litigation, but preclusion law governs once the state-court adjudication becomes complete). Federal courts must give full faith and credit to state court judgments. 28 U.S.C. § 1738 (2000); Pittsburgh County v. City of McAlester, 346 F.3d 1260, 1276 (10th Cir. 2003).

The preclusive effect of a state-court decision is governed by the preclusion law of the state in which the judgment was rendered. Nichols v. Board of County Comm'rs, 506 F.3d 962, 967 (10th Cir. 2007). Under Colorado law, "[c]laim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." Argus Real Estate, Inc. v. E-470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo. 2005). For claim preclusion to apply, the following elements must exist: "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." Id.

With regard to the first element, I assume for purposes of this analysis that the state court's order approving the sale constitutes finality. This action involves the same loan, deed of trust, and property as the state action, and it seeks an order setting aside the state foreclosure action. In addition, both actions involved US Bank. Because Wells Fargo and MERS appear on behalf of the same property interest as US Bank, privity exists between them. Plotner v. At&T Corp., 224 F.3d 1161, 1169 (10th Cir. 2000). Therefore, all of the elements for preclusion are

met, but only as to the plaintiffs' direct challenges to the foreclosure.[5] Therefore, to the extent issuance of an order approving the sale of the Property constitutes finality of the state foreclosure action, claim preclusion bars the plaintiff from relitigating the foreclosure action in this court.

If finality of the state foreclosure action has not yet occurred, this court must abstain under the rule of Younger v. Harris, 401 U.S. 37 (1971). Younger abstention provides as follows:

> Under the Younger abstention doctrine, federal courts should not interfere with state court proceedings by granting equitable relief-- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-- when a state forum provides an adequate avenue for relief. Younger abstention is non-discretionary; the district court must abstain once the conditions are met, absent extraordinary circumstances. As [the] court stated in Amanatullah [v. State Bd. Of Medical Examiners, 187 F.3d 1160 (10th Cir. 1999)]:
>
> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

Weitzel v. Div. Of Occupational and Professional Licensing, 240 F.3d 871, 875 (10th Cir. 2001)(internal citations omitted).

I agree with and adopt the court's conclusion in Beeler that "[a]ctions that challenge the Rule 120 order and process are proceedings involving important state interests concerning title to real property located and determined by operation of state law." Beeler, 2007 WL 1346591 at

---

[5]Insofar as the defendants seek dismissal of the remaining claims based on preclusion, they have not shown identity of subject matter or identity of claims for relief.

*1.  See also Memphis Street, LLC v. Lowe Enterprise Residential Investors, LLC, 2007 WL 1456067 (D. Colo. May 15, 2007).

Thus, regardless of whether the state foreclosure process reached finality before, during, or after the plaintiffs filed this action, they cannot assert claims which seek to set aside the foreclosure.  Claim Fifteen alleges that the defendants lacked standing to pursue the foreclosure, and Claim Sixteen alleges that the defendants were able to foreclose on the Property because they "perpetrated a fraud upon the Courts."  In addition, the plaintiffs request an order setting aside the foreclosure.  The Motion should be granted insofar as it seeks dismissal of Claim Fifteen, Claim Sixteen, and the plaintiff's request to set aside the foreclosure.

### B.  Federal Fair Debt Collection Practices Act

Claim One alleges that all defendants violated the FDCPA, "including, but not limited to 15 U.S.C. § 1692f(6)."  *Complaint*, ¶ 83.  The defendants argue that the plaintiffs have failed to state a claim under the FDCPA because they are not debt collectors under the Act.[6]  *Motion*, pp. 6-7.

In Rousseau v. Bank of New York, 08-cv-00205-PAB-BNB, the plaintiff brought suit against a bank for alleged misconduct during the foreclosure of his home.  The district judge found that the plaintiff's allegations for violation of the FDCPA survived the bank's motion to dismiss.  In doing so, he stated:

> First, even assuming that the FDCPA does not govern typical mortgage foreclosures because a foreclosure is an action on a security interest, the statute expands its reach to enforcers of security interests in one specific instance: where that party seeks to take property to which "there is no present right to possess[ ]."  15

---

[6] The defendants do not challenge the merits of the plaintiffs' FDCPA claim.

U.S.C. § 1692f(6)(A); *see also id.* § 1692a(6) (defining debt collector as a person who is in the business of collecting debts owed or due, but noting that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests"); *Warren v. Countrywide Home Loans, Inc.*, No. 08-16171, 2009 WL 2477764, *2 (11th Cir. Aug. 14, 2009) ("[S]everal courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property, falls outside the ambit of the FDCPA except for the provisions of section 1692f(6).") (quotations, alterations, citations omitted) (emphasis added); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 & n.3 (N.D. Ind. 2004) (noting that security enforcement activities fall outside the FDCPA, but also noting that section 1692f(6) is an exception to this rule and "applies to security enforcement actions"). Plaintiff expressly invokes section 1692f(6), alleging that defendants had no right to possess plaintiff's property because they were not the proper holders of the debt. *See* Compl. ¶¶ 19-21, 28. Under this provision, plaintiff's FDCPA claim is at least plausible.

Second, even the cases that reject FDCPA foreclosure claims recognize that, if a defendant seeks to collect money apart from the foreclosure process, such action would come within the bounds of the Act. For example, several recent decisions from courts in this circuit have noted the difference between cases involving non-judicial foreclosures, in which FDCPA claims are often disallowed, and cases involving judicial foreclosures, in which the claims are permitted. *See, e.g., Maynard v. Cannon*, --- F. Supp. 2d ---, 2008 WL 2465466, *2-3 (D. Utah 2008); *McDaniel v. South & Assoc., P.C.*, 325 F. Supp. 2d 1210, 1216-18 (D. Kan. 2004). This distinction is based on the differing nature of each foreclosure procedure; "[i]n contrast to non-judicial foreclosures, which are intended only to enforce the lender's security interest and not to collect the underlying debt, a typical judicial foreclosure usually does involve seeking a personal judgment against the debtor for a deficiency and hence would likely amount to debt collection." *Fouché v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 786 (S.D. Miss. 2008); see also *Maynard*, 2008 WL 2465466 at *3 ("[J]udicial foreclosure cases against an individual property owner are distinguishable from a nonjudicial foreclosure against the property."). In other words, in contrast to a foreclosure that is only against the property, where there is some attempt to collect

money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection. *See, e.g., Kee v. R-G Crown Bank*, --- F. Supp. 2d ---, 2009 WL 2852350, *5 (D. Utah 2009) ("The Defendants have not acted outside of the procedures of a non-judicial foreclosure in this case and, therefore, are not collecting a debt under the FDCPA."); *Maynard*, 2008 WL 2465466, at *4 (FDCPA claim failed because "Defendant was not engaged to collect a debt from [the mortgagor], only to initiate a non-judicial foreclosure by enforcing the security interest"); *McDaniel*, 325 F. Supp. 2d at 1217 (noting the difference between "collecting money from a consumer as opposed to enforcing an interest in real property" and holding that, because defendant sought a judicial foreclosure, including a personal judgment against plaintiff, the FDCPA applied); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money."); *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 722 (N.D. W. Va. 1998) ("Since the trustees were not collecting on the debt [within the one-year statute of limitations] but merely foreclosing on the property pursuant to the deed of trust, [their] activities do not fall within the terms of the FDCPA.").

The foreclosure action here, which proceeded under Rule 120 of the Colorado Rules of Civil Procedure, appears to have been a non-judicial foreclosure. *Cf. Plymouth Capital Co. v. District Court of Elbert County*, 955 P.2d 1014, 1015 (Colo.1998) (noting that Rule 120 is "an integral part of [Colorado's] streamlined, non-judicial foreclosure system"). However, plaintiff alleged that both prior to and after the initiation of the foreclosure, defendants corresponded with plaintiff in an "attempt[ ] to collect on the debt." Compl. ¶ 17 (emphasis added). This is, plausibly, an allegation that defendants persisted in monetary debt collection activities outside of the foreclosure context. If this allegation proves true, even those courts that hold a typical foreclosure action falls outside of the Act (because it is enforcement of security and not collection of money) would seem to permit a claim based on defendants' debt-collection activity. Thus, the Court need not decide at this stage whether a foreclosure is a debt collection, *Wilson*, 443 F.3d at 376, or not, *Hulse*, 195 F. Supp. 2d at 1204.

>>Plaintiff's allegations of attempts to "collect debt" during the process are sufficient to state a claim.[7]

Here, the plaintiffs allege that US Bank did not have standing to foreclose on the Property. *Complaint*, ¶ 64. They further allege that Wells Fargo called the plaintiffs on the telephone "reciting that they were 'debt collectors, attempting to collect a debt.'" Id. at ¶¶ 40,42. These allegation are sufficient to state a claim against US Bank and Wells Fargo under the FDCPA. The Motion should be denied to the extent it seeks dismissal of Claim One against defendants US Bank and Wells Fargo.

The plaintiffs do not allege any facts to show that defendants MERS attempted to enforce a security interest in the Property or collect a debt from them. The Motion should be granted insofar as it seeks dismissal of Claim One against MERS.

### C. Colorado Fair Debt Collection Practices Act

Claim Two alleges that defendants US Bank and Wells Fargo violated the CFDCPA. The defendants argue that because the CFDCPA is patterned after the FDCPA and both acts "contain substantively identical provisions," the plaintiffs' CFDCPA claim "fails for the same reasons as their FDCPA claim."

In construing the CFDCPA, the state courts rely on case law arising under the federal FDCPA. Flood v. Mercantile Adjustment Bureau, LLC, 176 P.3d 769, 773-73 (Colo. 2008). For the reasons stated in my analysis of the plaintiffs' federal FDCPA claim, the Motion should be denied as to Claim Two's allegations against defendants US Bank and Wells Fargo.

---

[7]Although the issue in Rousseau was whether the foreclosure was "debt collection" for purposes of the FDCPA, it follows that if the allegations against the bank stated a plausible claim of debt collection, the bank was a debt collector.

13

### D.  Colorado Consumer Protection Act

The plaintiffs' Third through Thirteenth Claims allege violations of the CCPA.  To succeed on a claim under the CCPA, a plaintiff must establish "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury."  Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998).  The district judge has already determined that the Complaint does not contain sufficient facts to meet the third requirement.  *Order* [Doc. #7], p. 6.  To the contrary, the plaintiffs "only describe the [defendants'] practices insofar as they impact them personally."  Id.  Accordingly, the Motion should be granted insofar as it seeks dismissal of the plaintiffs' claims under the CCPA.

### E.  Civil Conspiracy

Claim Fourteen alleges that all of the defendants "conspired to put Plaintiffs into a loan that Defendants had actual knowledge that Plaintiffs would not be able to pay after the payments began escalating."  *Complaint*, ¶ 153.  The defendants assert that the plaintiffs have failed to state a claim for civil conspiracy.  *Motion*, pp. 9-10.

In order to establish a civil conspiracy under Colorado law, a plaintiff must show that there are "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  Jet Courier Service, Inc. v. Mulei, 771 P.2d 486, 502 (Colo. 1989).

A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted).

The plaintiffs' allegations of conspiracy are vague and conclusory. The Complaint does not contain any specific allegations sufficient to plausibly support a claim for conspiracy. The Motion should be granted insofar as it seeks dismissal of Claim Fourteen.

### F. Remaining Claims

The plaintiffs also assert claims pursuant to sections 38-40-105; 12-61-904.5; and 12-61-911, C.R.S. (Claims Seven through Thirteen). Although the defendants seek dismissal of all of the plaintiffs' claims, *Motion*, pp. 1, 4, 10, they do not address these claims. The Motion should be denied insofar as it seeks dismissal of these claims.

### IV. CONCLUSION

I respectfully RECOMMEND that the Motion to Dismiss by Defendants U.S. Bank, Wells Fargo, and MERS and Supporting Brief [Doc. #22] be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED insofar as it seeks dismissal of Claims Fifteen, Sixteen, and the plaintiffs' request to set aside the foreclosure;

2. GRANTED to the extent it seeks dismissal of Claim One for violations of the federal Fair Debt Collection Practices Act against defendant MERS;

    3. DENIED insofar as it seeks dismissal of Claim One for violations of the federal Fair Debt Collection Practices Act against US Bank and Wells Fargo;

    4. DENIED to the extent it seeks dismissal of Claim Two for violations of the Colorado Fair Debt Collection Practices Act against US Bank and Wells Fargo;

    5. GRANTED insofar as it seeks dismissal of Claims Three through Six in their entirety and Claims Seven through Thirteen's allegations of violations of the Colorado Consumer Protection Act;

    6. DENIED insofar as it seeks dismissal of the plaintiffs' claims for violations of sections 38-40-105; 12-61-904.5; and 12-61-911, C.R.S., as found in Claims Seven through Thirteen; and

    7. GRANTED to the extent it seeks dismissal of Claim Fourteen for civil conspiracy.[8]

Dated August 3, 2012.

                                BY THE COURT:

                                s/ Boyd N. Boland
                                United States Magistrate Judge

---

[8]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).